**MILBERG TADLER PHILLIPS GROSSMAN LLP**
David Azar
11766 Wilshire Blvd, Suite 500
Los Angeles, CA 90025
(212) 594-5300
Facsimile: (212) 868-1229

*Attorneys for Plaintiffs*

[Additional Counsel Listed on Signature Page]

### UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALLYSON WERNER and JUDY MILMAN, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>APPLE, INC., a California Corporation,<br><br>Defendant. | CASE NO.<br><br>**<u>CLASS ACTION</u>**<br><br>COMPLAINT FOR:<br><br>1.  Violation of California Business and Professions Code § 17500 *et seq.*;<br><br>2.  Violation of California Business and Professions Code § 17200 *et seq.*;<br><br>3.  Trespass to Chattel<br><br>JURY TRIAL DEMANDED |

Plaintiffs allege the following upon personal knowledge as to their own acts, and upon information and belief based on the investigation conducted by Plaintiffs' counsel as to all other matters.

## Summary of Allegations

1.      This action seeks compensation and equitable relief on behalf of a class of consumers who purchased and/or owned Apple's iPhone smartphones, stemming from Apple's undisclosed slowing of iPhone processing speed to, as Apple would later claim, improve battery performance and stop iPhones from shutting down due to battery problems.

2.      As alleged below, in January 2017, Apple began to release a series of updates (the "Updates") to its operating system that materially slowed the processing speed of the iPhones, impacting negatively the speed with which the devices performed almost all of their functions. Apple did not disclose to consumers that the updates would have this effect, touting instead that the updates would fix security vulnerabilities and/or introduce new features and functionality.

3.      The undisclosed and unauthorized alteration of the iPhone materially degraded the devices, substantially decreasing their utility and value. In addition, not knowing that their iPhones were running slow because of Apple's software, consumers reasonably concluded that their phones had naturally degraded and that the only thing to do was to buy a new device. Apple made billions in profits because it tricked consumers into buying new iPhones.

4.      Apple was forced to admit the truth on December 20, 2017, after technology journalists tested iPhones and observed that older phones were slower. The revelations were widely reported by the press and snowballed into an international scandal, with French authorities investigating whether Apple's throttling software amounted to planned obsolescence to spur consumers to buy newer iPhone.

5.      The iPhones covered by this action are: iPhone 6 and 6 Plus, iPhone 6s and 6s Plus, iPhone SE, and iPhone 7 and 7 Plus (collectively, the "Devices").

## PARTIES

6.      Plaintiff Allyson Werner resides in and is a citizen of Vermont.  Plaintiff Werner bought an iPhone 6s in February 2016 for her personal use. Plaintiff Werner as a matter of course

---

CLASS ACTION COMPLAINT                          - 1 -

downloads all iPhone updates within a few days of their availability, and downloaded each of the Updates, which were accompanied by Release Notes (defined below) giving a description of what the update would do, namely, fix software bugs and/or improve security and/or add features. Plaintiff Werner believed that the Updates would do what Apple represented in the Release Notes. Approximately one year after purchasing her iPhone, Plaintiff Werner experienced a material slowing in the operation of her device, including slowed and lagging opening of applications, switching between applications, and slow scrolling within applications. Plaintiff Werner would not have downloaded the Updates if she knew that they would materially slow and degrade her device. In addition, Plaintiff Werner's battery drained very quickly, and could not last a day of normal use, forcing Plaintiff to carry a charger everywhere. After she heard of the scandal, Plaintiff replaced her battery through Apple for $29.

7. Plaintiff Judy Milman resides in and is a citizen of New York. Plaintiff Milman bought an iPhone 6 in or about March 2016 for her personal use. Plaintiff Milman as a matter of course downloads all iPhone updates within a few days of their availability, and downloaded each of the Updates, which were accompanied by Release Notes giving a description of what the update would do, namely, fix software bugs and/or improve security and/or add features. Plaintiff Milman believed that the Updates would do what Apple represented in the Release Notes. Approximately one year after purchasing her iPhone, Plaintiff Milman experienced a material slowing in the operation of her device, including slowed and lagging opening of applications, switching between applications, and slow scrolling within applications. Plaintiff Milman would not have downloaded the Updates if she knew that they would materially slow and degrade her device. In addition, Plaintiff Milman's battery drains very quickly and can barely hold a charge, dropping from 100% to 35% in minutes.

8. Defendant Apple, Inc. ("Apple") is a California corporation headquartered at 1 Infinite Loop, Cupertino, California 95014. Apple designs, manufactures and markets, among other products, the iPhone, iPad, and iPod Touch, each of which runs on Apple's operating system ("iOS").

**JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332 (a) and 1332 (d), because the amount in controversy exceeds $5,000,000.00 exclusive of interests and costs, and more than two-thirds of the members of the Class are citizens of states different from that of Defendant.

10.     Venue for this action properly lies in this District pursuant to 28 U.S.C. § 1391 as Defendant Apple's principal executive office and headquarters are located in California, within the Northern District of California. iOS and all the Updates and release notes were designed in California. All iPhones contain the representation "Designed by Apple in California" on the packaging. The throttling of iPhones at issue in this case occurred in California, and was meant to, and did, emanate from California to California residents and to non-California residents. Many, if not all, of the acts at issue in this action occurred in material respects in California.

**FACTUAL ALLEGATIONS**

**Apple's iOS Updates**

11.     On January 9, 2007, Apple entered the cellular telephone market with the introduction of its now-iconic and ubiquitous iPhone.  Possessing many of the capabilities of an internet-connected laptop computer and a camera in a sleek, compact device, the iPhone became one of the most popular consumer devices of all time.

12.     Apple introduces new versions of its iPhones annually in the fall to much media fanfare. New, current-generation iPhone models retail for $700 and up. In its top-of-the line configuration, the current "flagship" iPhone, the iPhone X, retails for $1,149.

13.     iPhones operate using Apple's proprietary iOS software system.  iOS is the mobile operating system that runs on Apple's mobile devices, including the Devices. iOS is the main software that allows users to interact with their Devices. iOS is pre-installed on iPhones, and the software is updated periodically to correct software bugs, patch security vulnerabilities, and introduce new features.

14.     Apple informs iPhone owners of new updates through pop-up notifications on the iPhone. These notifications describe the content of the update, the issues it fixes and/or the

new features. The notification requires that the iPhone owner consent to the new operating system update by affirmatively clicking a "download and install" button.

15.     If an iPhone user does not update their iOS, Apple's pop-up notifications continue to periodically and intrusively remind them to do it until they update.

16.     Apple strongly encourages iPhone users to download updates. For example, on its website, Apple states that updates are critical to maintain the security of its updates:

> "Keeping your software up to date is one of the most important things you can do to maintain your Apple product's security."

17.     iOS updates are permanent.    iPhone owners unhappy with an update cannot revert back to the older version of iOS.

18.     iOS updates are downloaded and installed as a single, all-or-none bundle; a user cannot, for example, download the security portion of the updates while not updating the new features.

**iPhones Shut Down Unexpectedly**

19.     In late 2016, numerous users of iPhone models 6, 6s, and 6s Plus reported that their devices were shutting down due to power loss even while the battery indicator showed that the battery had 30% or more remaining.

20.     Despite the widespread complaints, Apple claimed the issue impacted only a limited number of iPhone 6s models. Apple offered a battery replacement program to these consumers. Apple's announced this on November 20, 2016:

> Apple has determined that a very small number of iPhone 6s devices may unexpectedly shut down. This is not a safety issue and only affects devices within a limited serial number range that were manufactured between September and October 2015.
>
> If you have experienced this issue, please use the serial number checker below to see if your iPhone 6s is eligible for a battery replacement, free of charge.

21.     But the battery problems were broader than represented in Apple's November 20 statement. Complaints of unexpected shutdowns continued for iPhone 6s models not covered by

the free battery replacement program, and for other models altogether.   For example, as reported by *Fortune* on January 25, 2017:

> As many iPhone 6 owners have discovered, something is wrong with the battery. A bug or a defect causes the phone to crash dramatically: the power might plunge from 50% or 30% to 1% percent and other times the iPhone just shuts down altogether.

> When I wrote about the issue in December, Apple pointed to a battery replacement program that covers a "small number" of iPhone 6s devices manufactured in late 2015. Apple also acknowledged a "small number" of other iPhones may likewise be affected.

> After the story came out, I heard from dozens of readers who said they too are experiencing serious battery issues. Many also complained how Apple (AAPL, +0.52%) is giving them the runaround. This prompted me to take a deeper look and come to a conclusion: the iPhone battery issue is endemic, and there's a strong legal and public relations case for Apple to expand its recall program.

**Apple's Attempted Battery Fix Slows Down the Phones**

22.    Apple was soon forced to admit that the issue was far broader than it had indicated in November.  Rather than replace batteries for free, as it had done with the limited number of iPhone 6s models, it decided to try to fix it with a software update, a far cheaper alternative to replacing millions of iPhone batteries.

23.    On January 23, 2017, Apple offered for download iOS 10.2.1.  The release note that iPhone users received on their device represented that "iOS 10.2.1 includes bug fixes and improves the security of your iPhone or iPad":

24.     The representations in the release notes accompanying update 10.2.1 were misleading and deceptive because it failed to disclose that it would significantly slow the operation of the phone by capping processing speed. The slowed processing speed negatively impacted all aspects of the operation of the Devices, including the speed with which applications were opened and operated, and the speed at which internet pages and email can be navigated.

25.     iOS updates are cumulative, with each subsequent release adding new features and fixes. Accordingly, a user who chose not to download 10.2.1 but downloaded subsequent releases downloaded the throttling program at issue in this case.  This included at least the following download notices accompanied by the following release notes ("Release Notes"):

- 10.3:  "introduces new features . . ."
- 10.3.1: "includes bug fixes and improves the security of your iPhone or iPad.
- 10.3.2: "includes bug fixes and improves the security of your iPhone or iPad"
- 10.3.3:  "includes bug fixes and improves the security of your iPhone or iPad"
- 11.0.1:  "includes bug fixes and improvements for your iPhone or iPad"
- 11.0.2: "includes bug fixes and improvements for your iPhone or iPad. . . "
- 11.0.3: "includes bug fixes and improvements for your iPhone or iPad . . ."
- 11.1:  "introduces 70 new emoji and includes bug fixes and improvements . . ."
- 11.1.1:  "includes bug fixes and improvements for your iPhone or iPad . . ."
- 11.1.2:  "includes bug fixes and improvements for your iPhone or iPad . . . "
- 11.2.1:   "includes bug fixes and improvements for your iPhone or iPad . . . "

26.     The Release Notes did not disclose to consumers that the processing speed of their devices would be materially slowed by the Updates.

27.     Moreover, Apple's battery-fix has not helped Plaintiffs. As alleged above, Plaintiffs' battery performance was significantly worse after installing the Updates than before,

with the charge becoming depleted far quicker than expected, requiring the devices to be plugged in almost constantly.

**Apple is Forced to Admit The Truth**

28.     On December 20, 2017, Apple was forced to admit that it had slowed the processing speed of iPhones with older batteries. The admission came after technology journalists/bloggers tested iPhones and observed that devices with older batteries were slower. The admission was widely reported by the media as a major scandal, because it evidenced a long-running suspicion: that Apple was purposefully degrading older iPhones to sell new ones. For example, *Chicago Tribune* reported as follows on December 21, 2017:

> Apple is taking heat for a discovery about old iPhones: As their batteries age, Apple's software slows them down.
>
> The phenomenon, discovered by Reddit members and acknowledged Wednesday by Apple, throws gasoline onto a long-standing conspiracy theory that iPhones slow to crawl as a sly way to convince us to buy new ones.

29.     Apple's own statement on the matter was as follows:

> Our goal is to deliver the best experience for customers, which includes overall performance and prolonging the life of their devices. Lithium-ion batteries become less capable of supplying peak current demands when in cold conditions, have a low battery charge or as they age over time, which can result in the device unexpectedly shutting down to protect its electronic components.
>
> Last year we released a feature for iPhone 6, iPhone 6s and iPhone SE to smooth out the instantaneous peaks only when needed to prevent the device from unexpectedly shutting down during these conditions. We've now extended that feature to iPhone 7 with iOS 11.2, and plan to add support for other products in the future.

30.     Apple's undisclosed throttling materially and negatively impacted the performance of the Devices, damaging owners of the Devices by leaving them with a less

capable device worth far less than what they paid for, and what it would be worth upon resale or trade-in.

31.    Moreover, because they were not told that their iPhones were purposefully slowed, consumers reasonably thought that their phones had degraded naturally, and the only thing to do was to accept materially reduced performance or purchase a new iPhone.  Consumers had no way of knowing what Apple chose not to tell them: that their device speed was not naturally degraded, and that replacing the battery would fix the problem.

32.    Upon information and belief Apple has sold millions of iPhones from consumers that bought new iPhones because their Devices were unacceptably slow. Had they known the truth—that replacing the battery would restore the operating speed lost due to Apple's software—they would have replaced the battery for a fraction of the cost of a new iPhone.

33.    As a result of the scandal, Apple lowered its battery replacement cost to $29 from $79 for owners of iPhone 6 and newer iPhone models.  This is insufficient because it comes almost a year after impacted consumers had either lived with a degraded device and/or bought a new iPhone.  Moreover, upon information and belief, Apple will profit by selling the batteries even at the reduced price.  Apple should not profit by selling solutions to problems caused by its illegal and inequitable conduct.

34.    On January 4, 2018, Apple published a more in-depth explanation about the effects of the power management fix introduced in iOS 10.2.1:

> This power management works by looking at a combination of the device temperature, battery state of charge, and battery impedance. Only if these variables require it, iOS will dynamically manage the maximum performance of some system components, such as the CPU and GPU, in order to prevent unexpected shutdowns. As a result, the device workloads will self-balance, allowing a smoother distribution of system tasks, rather than larger, quick spikes of performance all at once. In some cases, a user may not notice any differences in daily device performance. The level of perceived change depends on how much power management is required for a particular device.

In cases that require more extreme forms of this power management, the user may notice effects such as:

- Longer app launch times

- Lower frame rates while scrolling

- Backlight dimming (which can be overridden in Control Center)

- Lower speaker volume by up to -3dB

- Gradual frame rate reductions in some apps

- During the most extreme cases, the camera flash will be disabled as visible in the camera UI

- Apps refreshing in background may require reloading upon launch

35.    In other words, after it was exposed, Apple admitted that the Updates, which it told consumers would fix bugs and improve security would, as Apple euphemistically put it, "perceive change" with respect to almost all aspects of the iPhone's operation.

36.    On January 9, 2018, the *Los Angeles Times* reported that Apple was under investigation by the French finance ministry for planned obsolescence:

French authorities have opened an investigation into Apple Inc. over revelations it secretly slowed down older versions of its iPhones, the Paris prosecutor's office said Tuesday.

The preliminary investigation was opened last week over alleged "deception and planned obsolescence" of some Apple products, the office said. It is led by the French body in charge of fraud control, which is part of the finance ministry.

It follows a legal complaint filed in December by a French consumer rights group whose aim is to stop the intentional obsolescence of goods by companies.

In France it is illegal to intentionally shorten the lifespan of a product in order to encourage customers replace it. A 2015 law makes that a crime, with penalties of up to two years in prison and fines of up to 5% of the company's annual revenue.

**CLASS ACTION ALLEGATIONS**

37.    Plaintiffs bring this action pursuant to Fed. R. Civ. P. 23 on behalf of a Class defined as follows:

All consumers who bought, leased, or received within the United States any of the Devices and downloaded any of the Updates.

38.    Excluded from the Class is Defendant; any parent, subsidiary, or affiliate of Defendant or any employees, officers, or directors of Defendant; legal representatives, successors, or assigns of Defendant; and any justice, judge, or magistrate judge of the United States who may hear the case, and all persons related to any such judicial officer, as defined in 28 U.S.C. § 455(b).

39.    **Numerosity**.  The Class members are so numerous and dispersed nationwide that joinder of all members is impracticable.   Upon information and belief, the Class members number in the hundreds of thousands, if not millions.   The exact number of Class members is unknown, but can be determined from Defendant's computerized other records.   Plaintiffs reasonably estimate and believe that there are thousands of persons in the Class.

40.    **Commonality**.  There are numerous and substantial questions of law and fact that are common to all members of the Class, which predominate over any question affecting only individual Class members.   Resolving these questions of law and fact will resolve them for all members of the class.   The members of the Class were and continue to be subjected to the same practices of the Defendant.   The common questions and issues raised by Plaintiffs' claims include:

(a)    whether owners of the Devices consented to Defendant's slowing of their Device(s);

(b)    whether Defendant has violated the California Business and Professions Code § 17200 *et seq.*;

(c)    whether Defendant violated California Business and Professions Code § 17500 *et seq.*;

(d)    whether Defendant's conduct amounts to a trespass to chattel;

(e)     whether Plaintiffs and the Class have been damaged as a result of Defendant's alleged violations; and, if so, the nature and extent of any remedies, legal and equitable, to which Plaintiffs and the Class are entitled.

41.    **Typicality**.  Plaintiffs' claims are typical of the claims of all of the other members of the Class, because their claims are based on the same legal and remedial theories as the claims of the Class and arise from the same course of conduct by Defendant.

42.    **Adequacy**.    Plaintiffs will fairly and adequately protect the interests of all members of the class in the prosecution of this Action and in the administration of all matters relating to the claims stated herein.   Plaintiffs are similarly situated with, and have suffered similar injuries as, the members of the Class they seek to represent.   Plaintiffs have retained counsel experienced in handling class action lawsuits.   Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this action.

43.    **Superiority**.  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, since individual joinder of the Class members is impracticable.   Even if individual Class members were able to afford individual litigation, it would be unduly burdensome to the Courts in which the individual litigation would proceed. Defendant has subjected the Class to the same alleged violations.    Accordingly, class certification is appropriate under Rule 23 because common issues of law and fact regarding Defendants' uniform violations predominate over individual issues, and class certification is a superior method of resolving these claims.  No unusual difficulties are likely to be encountered in the management of this action as a class action.  Defendant acted and continues to act in a manner that is generally applicable to all members of the Class, making final injunctive relief appropriate.

### FIRST CAUSE OF ACTION
**(Violation Of California Business and Professions Code § 17500, *et seq*.**
**Misleading, Deceptive Or Untrue Advertising)**

44.    Plaintiffs hereby incorporate by reference the allegations contained in all of the preceding paragraphs of this Complaint.

45.     Plaintiffs assert this cause of action against Defendant for violations of California Business and Professions Code § 17500 *et seq.* for misleading and deceptive advertising.

46.     Prior to accepting and downloading each Update, Plaintiffs and all Device users were shown the Release Notes. The Release Notes appeared on the Devices, on the same screen that contained the "Download and Install" button.  As alleged above, for example, the Release Note for update 10.2.1, which introduced the slowdown, represented to Plaintiffs and the Class on their devices that the update contained "bug fixes and improves the security of your iPhone or iPad." While the exact wording of the Release Notes differed, they were identical in all ways relevant to this action because they each omitted the truth: that the updates would cause the processing speed of the Devices to slow materially, rendering the affirmative representations deceptive and misleading on a topic of critical importance that affected all aspects of the operation of the Devices.

47.     Plaintiffs and members of the Class believed that the Updates would do what Apple represented in the Release Notes, and would not have downloaded the Updates if they knew the truth that Apple chose to omit.

48.     iOS and all the Updates and Release Notes were designed in California. The throttling of iPhones at issue in this case occurred in California, and was meant to, and did, emanate from California to California residents and to non-California residents. The Release Notes come within the definition of advertising as contained in Business and Professions Code § 17500 *et seq*. in that such representations were intended as inducements to use products and services offered by Defendant and are statements disseminated by Defendant to Plaintiffs and were intended to reach Plaintiffs.  Defendant knew, or in the exercise of reasonable care should have known, that these statements were misleading and deceptive.

49.     In furtherance of said plan and scheme, Defendant has prepared and distributed within the State of California (and nationally) *via* commercial marketing and advertising, the World Wide Web (Internet) statements that misleadingly and deceptively represent the truth about the effect of the Updates.

50.     Consumers, including Plaintiffs, were among the intended targets of such representations.

51.     The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California and nationally to consumers, including Plaintiffs, were and are likely to deceive reasonable consumers, including Plaintiffs, by obfuscating the truth about the Updates and the Devices, all in violation of California Business and Professions Code § 17500.

52.     As a result of the above violations of Business and Professions Code § 17500 *et seq.*, Defendant has been unjustly enriched at the expense of Plaintiffs and the Class. Plaintiffs, pursuant to Business and Professions Code § 17535, seek an order of this Court requiring Defendants to:

        (a)     make full restitution of all monies wrongfully obtained; and

        (b)     disgorge all ill-gotten revenues and/or profits.

## SECOND CAUSE OF ACTION

**Unlawful Business Practices In Violation Of California's Unfair Competition Law ("UCL"),   Business & Professions Code §§ 17200 *et seq.***
**(Unlawful Practices)**

53.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

54.     Defendant violated the unlawful prong of the UCL by violating Business & Professions Code § 17500 as described above.

55.     iOS and all the Updates and Release Notes were designed in California. The throttling of iPhones at issue in this case occurred in California, and was meant to, and did, emanate from California to California residents and to non-California residents.

56.     Plaintiffs and the members of the Class were damaged as a result of the violations of the unlawful prong of the UCL because the operation of their Devices was significantly degraded by a slowing down of the Devices' processing and operating speeds, rendering them worth far less than what they paid, and negatively impacting their resale value. In addition, consumers were harmed by being tricked into purchasing new iPhones from Apple at a cost of

many hundreds of dollars instead of restoring the Devices to their pre-Update operating speeds by purchasing new batteries for a fraction of the cost they spent on new iPhones.

57.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court requiring Defendant to:

(a)     make full restitution of all monies wrongfully obtained; and

(b)     disgorge all ill-gotten revenues and/or profits.

### THIRD CAUSE OF ACTION

**Unlawful Business Practices In Violation Of California's UCL**
**(Unfair Practices)**

58.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

59.     Defendant's conduct, described herein, violated the unfair prong of the UCL because such conduct violated various laws and policies recognized by the California Legislature and the California courts, including without limitation, the California Legal Remedies Act (Cal. Civ. Code § 1750 *et seq.*) and the False Advertising Law ( Cal. Business Code § 17500 *et seq.*), which evidence a strong public policy of honest dealing in transactions between businesses and consumers.

60.     In addition, the utility (if any) of Defendant's conduct is significantly outweighed by the gravity of the harms it imposed on consumers, and because Defendant's business practices described herein are oppressive, unscrupulous, or substantially injurious to consumers.

61.     Plaintiffs and the members of the Class were damaged as a result of the violations of the unfair prong of the UCL because the operation of their Devices was significantly degraded by a slowing down of the Devices' processing and operating speeds, rendering them worth far less than what they paid, and negatively impacting their resale value. In addition, consumers were harmed by being tricked into purchasing new iPhones from Apple at a cost of many hundreds of dollars instead of restoring the Devices to their pre-Update operating speeds by purchasing new batteries for a fraction of the cost they spent on new iPhones.

62.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an order of this Court requiring Defendants to:

(a)     make full restitution of all monies wrongfully obtained; and

(b)     disgorge all ill-gotten revenues and/or profits.

### FOURTH CAUSE OF ACTION

**Unlawful Business Practices In Violation Of California's UCL**
**(Fraudulent and Deceptive Practices)**

63.     Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

64.     Defendant committed fraudulent and deceptive business acts or practices by, among other things, engaging in conduct Defendant knew or should have known was likely to and did deceive the public, including Plaintiffs and other Class Members.

65.     As detailed above, Defendant's unlawful, unfair, and/or fraudulent practices include making false and/or misleading representations in the Release Notes, which touted the benefits of the Updates while omitting the critically important information that the operation of the Devices would be slowed materially.

66.     Plaintiffs and other Class members believed the Updates would do what Apple represented in the Release Notes: fix bugs and introduce functionality. They did not know, and could not have known, what Apple chose to omit to tell them: that their Devices would be saddled with materially slower operation.

67.     Plaintiffs and the members of the Class were damaged as a result of the violations of the unfair prong of the UCL because the operation of their Devices was significantly degraded by a slowing down of the Devices' processing and operating speeds, rendering them worth far less than what they paid, and negatively impacting their resale value. In addition, consumers were harmed by being tricked into purchasing new iPhones from Apple at a cost of many hundreds of dollars instead of restoring the Devices to their pre-Update operating speeds by purchasing new batteries for a fraction of the cost they spent on new iPhones.

68.     Pursuant to Bus. & Prof. Code § 17203, Plaintiffs seek an order requiring Defendants to:

        (a)    make full restitution of all monies wrongfully obtained; and

        (b)    disgorge all ill-gotten revenues and/or profits.

## FIFTH CAUSE OF ACTION

### Trespass to Chattel

69.     Plaintiffs incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

70.     The Devices are personal, private property of Plaintiffs and constitute chattel under common law.

71.     Apple's conduct as alleged herein was an unauthorized interference with the Devices. Plaintiffs did not authorize Defendant to install software on the Devices that dramatically slowed the operations of their Devices, which constituted an impairment of the Devices.

72.     Apple's conduct was intentional. Apple designed the Updates and Release Notes and knew exactly what the effects would be. Slowing down the Devices was the intended effect.

73.     Plaintiffs suffered actual damages because of Apple's violation of Plaintiffs' property rights. The Devices were materially slowed, could not function as well as before the Updates were installed, and were worth less than they had been. In addition, Defendant tricked Plaintiffs into thinking they needed to buy new iPhones to regain the lost performance of the Devices, when in fact they could have replaced the battery for much less.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, request the following relief:

A.     An order certifying that this action is properly brought and may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, that Plaintiffs be appointed as Class Representatives, and that Plaintiffs' counsel be appointed Class Counsel;

CLASS ACTION COMPLAINT          - 16 -

B.      An award of damages and/or equitable relief.

C.      Restitution of all monies unjustly obtained or to be obtained from Plaintiffs and members of the Class, and disgorgement of ill-gotten revenues and/or profits.

D.      Declaratory and injunctive relief;

E.      An award of reasonable attorneys' fees and costs; and

F.      Such other relief at law or equity as this court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand trial of their claims by jury to the extent authorized by law.

DATED: January 12, 2018

**MILBERG TADLER PHILLIPS GROSSMAN LLP**


/s/David Azar
David Azar
11766 Wilshire Blvd, Suite 500
Los Angeles, CA 90025
(212) 594-5300
Facsimile: (212) 868-1229

**MILBERG TADLER PHILLIPS GROSSMAN LLP**
Peggy Wedgworth
Andrei Rado
Jennifer Czeisler
One Pennsylvania Plaza
Suite 1920
New York, New York 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229


*Attorneys for Plaintiffs*